HARLEY CARTER, Appellant, v. JOSEPH B. FLEMING, Trustee, Appellee.

No. 46976.

·FEBRUARY 11, 1947.

Ralph H. Munro, of Fairfield, for appellant.

Booker Smith, of Fairfield, and J. G. Gamble, R. L. Read, and A. B. Howland, all of Des Moines, for appellee.

SMITH, J.—Plaintiff was operating a farm near Fairfield, Iowa, in 1939. On September 27th of that year he purchased of Jacob Bros., Inc., of Kansas City, Missouri, ninety-eight head of cattle. They were a part of a larger shipment en route from Victoria, Texas, to Jefferson City, Missouri, then in the feed yards of the Missouri Pacific Railroad at Prospect, a suburb of Kansas City.

After this purchase the ninety-eight head were diverted from the destination of the original shipment and rerouted in two cars over defendant's line to Fairfield, consigned to "Jacob Bros. & Harley Carter." (One of the three freight bills gives consignee as "Jacob Bros. c/o Harley Carter.") Jacob Bros. paid the freight through to Fairfield.

The freight bills showed the cattle had been loaded at Victoria September 24th at 5 p.m.; unloaded at Ennis, Texas, the 25th at 7 a.m.; reloaded there at 2:30 p.m.; unloaded at Prospect the 27th at 2 a.m., and reloaded the same day at 4 p.m. They reached Fairfield before noon September 28th.

This action is based upon alleged injuries to said cattle while en route from Prospect, Missouri, to Fairfield. Defendant pleaded as one defense that the action was barred under the limitation contained in the "uniform livestock contract" under which the cattle were transported, because not commenced within the time therein provided. There was no reply.

At the close of the evidence defendant moved for a directed verdict, again urging that the action was barred under the terms of the uniform livestock contract, "established and prescribed by Consolidated Freight Classification No. 13," which

required that claims must be filed in writing with the receiving or delivering carrier within nine months after delivery and that:

" * * * *·*suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim * * *." (Italics supplied.)

The motion pointed out that this claim was declined in writing on or about September 3, 1940, and the action was not commenced within two years and one day thereafter.

The court overruled the motion but instructed the jury:

"10. During the course of the trial mention has been made and you probably have come to understand that there is some question in this case as to whether Plaintiff's suit now on trial was instituted in the time required by law.

"As to this phase of the case you are instructed that this question is a matter for determination by the Court and is not a matter for your consideration, and you will give the same no consideration for any purpose in determining the case."

The jury returned a verdict for defendant. Plaintiff filed motion for new trial urging two grounds only: 1. Misconduct of defendant's attorney in cross-examination of plaintiff; and 2, insufficiency of evidence to sustain the verdict.

Defendant filed resistance to this motion, in which it was again urged that the motion to direct verdict should have been· sustained, "since it affirmatively appeared that the action of plaintiff was not brought within two years and one day after the claim was declined in writing by the carrier * * *."

The trial court overruled the motion for new trial "on each and every ground, and also on the ground that said claim is barred by limitations." (Italics supplied.) The only questions urged here are those presented by plaintiff in his motion for new trial and defendant's contention that the action was barred.

We need only to consider this last proposition, as we deem it determinative of the case. The facts bearing on it are not in dispute. The shipment was interstate. It originated with the Texas and New Orleans Railroad at Victoria, Texas, reached Prospect, Missouri, by connecting lines and was delivered to

defendant's lines at Kansas City and thence transported to Fairfield, Iowa, reaching there *September 28, 1939.*

On December 28, 1939, plaintiff wrote Herman Jacob at Kansas City:

"Attached is claim for Nine steers valued at
$45.00 each ......................................$405.00
Veterinary service .............................. 35.00
Extra expense help caring for injured animals ........ 30.00
 ———
 $470.00

Please handle this claim for me. Receipts for dead animals attached also D V M statement also Agts. Fairfield Ia and Receipted Frt Bills attached."

The letter was signed and verified.

On *March 28, 1940,* the claim was sent to defendant with the following letter:

"Kansas City, Mo. March 28, 1940.
Jacob Bros., Inc., Claim No. 40-12 $470.00
Mr. W. O. Bunger, General Superintendent Freight Claims,
 Chicago, Rock Island & Pacific Rwy Co., LaSalle Street
 Station, Chicago, Illinois.
Dear Sir:

We hand you our claim as above numbered. This claim is presented by reason of damaged condition upon arrival at Fairfield, Iowa of cattle contained in shipment which moved under Victoria, Texas Way Bills TN 797 and 798 of September 24, 1939. * * * We attach statement and affidavit of Mr. Harley Carter, Fairfield, Iowa freight bills 33, 34 and 35 of September 28, 1939, statement of Dr. W. R. Cavanee, DVM, statement of your agent at Fairfield and truck driver's pickup slips showing removal of deads from Mr. Carter's farm. We ask reimbursement of $470.00 as set out in Mr. Carter's statement.

Yours truly, JACOB BROS., INC. & CARTER
 W. H. Jacob."

On *September 3, 1940,* defendant replied, so far as material, as follows:

"Declined September 3, 1940
 Claim—27372—12

Jacob Bros. Inc., 646 Live Stock Exchange,
 Kansas City, Missouri.

Gentlemen: I have reference to your claim No. 40-12 of March 28, concerning shipment of feeder calves moving Victoria, Texas September 24, 1939, to Fairfield, Iowa, consigned care of Harley Carter.

As a matter of record this shipment originated with the T&NO RR. Co. September 24, 1939, loaded Victoria, Texas consigned Jacob Bros., Jefferson City, Mo., routed T&NO Dennison, KOG, Okav and MP billed to stop at Prospect, Mo. for feed, water and hold for orders. The 98 calves in this shipment were transported to Prospect, Mo. by connecting lines without delay or accident of any kind, the shipment reaching Prospect feed yard the morning of September 27th. Ninety-eight calves loaded, yarded, fed and rested, shipment diverted that same afternoon to Jacob Bros., care of Harley Carter, Fairfield, Ia., routed MP Kansas City CRI&P. Mo. Pac RR. advise shipment reloaded and transported in first available train which caused arrival at Kansas City the same evening, delivered the CRI&P 8:40 p.m."

Then follows a statement of reasons for disallowing the claim and the letter concludes:

"Under the clear record there being no negligence we are unable to admit of liability, the claim is respectfully declined for carriers account."

This was September 3, 1940. The present action was commenced June 3, 1943, two years and nine months thereafter.

I. Division 11 of section 20 of Interstate Commerce Act (49 U.S.C., section 20, par. (11)) prohibits carriers from limiting (by rule, contract, regulation or otherwise):

" * * * a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim * * *,"

This statute recognizes the legality of a limitation of not less than two years within which a shipper may sue a carrier. Hilbert v. Pennsylvania R. Co., 277 Pa. 105, 120 A. 778; Humphrey-Cornell Co. v. Hines, 97 Conn. 21, 115 A. 561; L. M. Kirkpatrick Co. v. Illinois Cent. R. Co., 190 Miss. 157, 195 So. 692, 135 A. L. R. 607, 610. The last-cited case holds that the carrier may not waive or extend the period of limitation fixed under the provisions of the Commerce Act and the uniform bill of lading provided by the Interstate Commerce Commission. See annotation, 135 A. L. R. 622 et seq.; Keeney v. Chicago, B. & Q. R. Co., 183 Iowa 522, 531, 167 N. W. 475.

 The record shows that the consolidated freight classification covering movement of all freight in the United States (filed with various regulatory bodies including the Interstate Commerce Commission) prescribed the terms and conditions of the uniform livestock contract which provided:

" (c) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier * * * within nine months after delivery of the property * * * and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim * * * Where claims are not filed or suits not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The record here does not show whether a bill of lading issued containing the limitation provision above quoted. But the uniform livestock contract embodied in the consolidated freight classification was a part of the contract of shipment even if not contained in a bill of lading. New York Cent. R. Co. v. Lazarus, 2 Cir., N. Y., 278 F. 900, 903; 13 C.J.S. 500, Carriers, section 242b; Pelaggi & Co. v. Central Vermont Ry. Co., 97 Vt. 1, 121 A. 441. We think the claim was barred under the limitation provision above set out.

 II. It is suggested the disallowing letter of September 3, 1940, did not start the limitation period because not addressed or sent to plaintiff. The proposition will not bear analysis. We

need not speculate as to when title to the cattle passed to plaintiff as bearing on the question of ownership of the claim for damages. Conceivably it might be argued that the facts indicated an intention to retain title in the seller until delivery by the carrier to plaintiff. The time of payment of purchase price, the naming (in the freight bills) of the seller as consignee or coconsignee, the agreement of the seller to prepay freight, the fact the claim was filed in the name of both seller and plaintiff —all these circumstances might be argued to point to Jacob Bros., Inc. as the owner or co-owner of the claim. Plaintiff himself pleaded an assignment of it from Jacob Bros., Inc., dated November 20, 1940, long after it was filed, and in a letter of July 14, 1941, to defendant asserted the fact of such assignment.

But, assuming he was sole owner of the claim when filed, the fact remains that he sent it to Herman Jacob asking him to "please handle this claim for me." We think it clear "Herman Jacob" was the same "Mr. Jacob" who he testified sold him the cattle and a member of the firm of Jacob Bros. The agent he thus designated exercised the authority and caused the claim to be filed. Plaintiff has not disavowed the manner of its exercise.

On the contrary, he is here relying on that filing as the only compliance with the limitation requiring it to be filed within nine months. The letter disallowing the claim was addressed to Jacob Bros., Inc. It was responsive to the claim as filed.

It is pertinent to say plaintiff was directly advised on August 19, 1941, that the claim had been disallowed September 3, 1940. He then still had more than a year in which to commence action. He delayed until June 3, 1943, more than twenty-one months.

We think the claim was barred and the trial court correctly so held.—Affirmed.

All JUSTICES concur.