L. M. KIRKPATRICK Co. *v.* I. C. R. Co.

(En Banc. May 6, 1940. Suggestion of Error Overruled Feb. 10, 1941.)

[195 So. 692. No. 34131.]

Henley, Jones & Woodliff, of Hazlehurst, for appellant.

E. C. Craig and V. W. Foster, both of Chicago, Ill.,
Clinton H. McKay, Lucius E. Burch, Jr., and Frank F.
Roberson, all of Memphis, Tenn., and M. S. McNeil and
Lena Zama, both of Hazlehurst, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellants, L. M. Kirkpatrick Company, a partnership, brought this action in the Circuit Court of Copiah County against appellee to recover damages alleged to have been caused by unreasonable delay in the shipment of three carloads of tomatoes by appellants to customers in Canada over appellee's line of railroad and its connecting carriers. The amount sued for was approximately $2,000. By agreement of the parties, the cause was tried before the circuit judge sitting as judge and jury upon the pleadings in the cause, agreed facts and testimony, resulting in a judgment in favor of appellee. From that judgment, this appeal is prosecuted.

Appellee defended on the ground that when the suit was brought, under the Federal Commerce Act, Chap. 208, 46 Stat. 251, 49 U. S. C. A., sec. 20(11), and the terms of the bills of lading covering the shipments, issued in compliance with the said act, whatever cause of action, and the remedy therefor, existed, were barred because suit was not brought within two years and a day from

the time appellee rejected, in writing, appellant's claim for the damages.

The shipments were made in June, 1934. At the time they were made, and bills of lading issued therefor, there was no duty on tomatoes shipped from the United States to Canada. However, before these shipments reached the Canadian line, a law of Canada had gone into effect imposing a tariff duty of 3 cents per pound. Appellants ascertained that it would be to their interest to sell the tomatoes on this side of the border rather than pay the duty, which they did, at a loss in the amount sued for. They alleged that if the shipments had been made with reasonable expedition, the tomatoes would have reached Canada before this duty went into effect.

The bills of lading for these shipments were in the form prescribed by the Interstate Commerce Commission. Sec. 2-b of the bill of lading is in this language: "As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The Commerce Act contains this provision: "That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days, for the filing of claims than four months, and for the institution of

suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.''

Appellants, on October 2, 1934, presented their claim in writing to appellee for the alleged loss. On February 19, 1935, appellee declined in writing to pay the claim and again declined payment in writing on October 19, 1935. This action was brought more than two years after both the first and the second declination. However, within two years and a day of such declination, appellee agreed to reconsider the claim of appellants and thereupon proceeded to do so. After such further consideration, the appellee again notified appellants that it stood upon its prior refusal to pay the claim. This action was brought within two years and a day after the giving of that notice. Appellants' contention is that by such agreement to reconsider, appellee waived the period of limitation that had already run, and started a new period of two years and a day. While appellee contends that, under the Commerce Act and the terms of the bill of lading, it was without power to make such waiver.

The outstanding purpose of the Commerce Act was to absolutely uproot and destroy all discriminations in interstate commerce regardless of how conceived or by what plan, scheme or device they may be sought to be accomplished. To that end, the carrier is without power to waive any valid provision of the contract constituting a defense. Blair-Baker Horse Company v. Atchison, T. & S. F. Ry. Co., Mo. App., 200 S. W. 109. Our case, Illinois Cent. R. Co. v. Rogers & Hurdle, 116 Miss. 99, 76 So. 686, although not directly in point, is illustrative of the purposes of the statute. It was held in that case that the limitation in the bill of lading fixing the time within which suit should be brought was a condition precedent to the right to sue. In American Ry. Express Co. v. Shideler, 88 Ind. App. 645, 647, 165 N. E. 336, 337, this

language was used: "Upon receipt by the appellee of the appellant's written notice of declination of the appellee's claim, appellee refused to take 'No' for an answer, and continued for a year or more to write to the appellant requesting payment and tried to show appellant that the claim was a meritorious one. Letters passed both ways between the parties, but at no time did the appellant agree to pay the claim, or recede from the statement made in the letter of October 28, 1921." In Georgia, Florida, etc., Co. v́. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 544, 60 L. Ed. 948, the Court used this language: "The parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

The carrier cannot by conversations, letters and negotiations extend the time for suit beyond that limited by the bill of lading and the Commerce Act. Shroyer v. Chicago, R. I. & G. Ry. Co., 111 Tex. 24, 222 S. W. 1095. "An interstate carrier cannot extend the time within which under the bill of lading a suit against it for loss of the goods may be brought, as that would involve a discrimination." Spartan Mills v. Davis, Director General of Railroads, 126 S. C. 312, 119 S. E. 905. The following decisions are to the same effect: Wm. F. Mosser Co. v. Payne, Director General of Railroads, 92 W. Va. 41, 114 S. E. 365; Zang et al. v. Railway Express Co., 130 Ohio St. 17, 196 N. E. 901. Ellis & Co. v. Davis, 260 U. S. 692, 43 S. Ct. 243, 67 L. Ed. 460, and Chesapeake & Ohio R. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983, although not directly in point lay down principles which inevitably lead to the conclusion that when the Statute of Limitations is put in operation, it cannot be

stopped by agreement between the carrier and the shipper. In the Ellis case, supra, the Court reviewed the decision of the Interstate Commerce Commission in Decker & Sons v. Director General, 55 I. C. C. 453, relied on by appellants, and disapproved its rulings so far as it has any application to the present case.

These decisions mean that under the provisions of the Commerce Act, and the uniform bill of lading provided by the Interstate Commerce Commission, the time fixed within which claim for loss shall be filed, as well as the time fixed within which suit must be brought, are conditions precedent to liability. In other words, after the lapse of such time, both the right and the remedy are barred. And, they mean further that neither period of time can be waived by the carrier. Otherwise, the door would be opened to discriminations in favor of one class of shippers over another. The Commerce Act sought as far as possible to bring about not only uniformity and equality in rates but uniformity and equality in all services and practices of common carriers in interstate commerce. In considering this question, it should be borne in mind that this is not exclusively private litigation—the result affecting alone the parties to this cause. In a large measure, it is public litigation—the result affecting the public generally, as well as the parties to the particular cause. The question as to what rights can be waived by a party to a transaction affected with a public interest, is very different from one where the rights of the parties alone are involved.

Whether, during the two year and one day period of limitation, the carrier could reconsider and make a valid settlement and adjustment of the claim is not involved in this case; therefore, the question is not decided. The sole question decided is whether the carrier, by negotiations or otherwise, taking place during that period, can extend the limitation. We say it can not.

Affirmed.

DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

The exact question for decision is not whether a railroad company may waive or extend the statute's limitation on the time within which actions under it must be brought, but whether a railroad company after having refused to pay a claim for damages to a shipper, when it doubts the justice of its refusal, or desires to investigate the matter further, has the right to withdraw its refusal and pay the claim or take the matter up again with the shipper; in other words, whether a refusal of a railroad company to pay such a claim is irrevocable. The statute does not expressly prohibit such a revocation and I find nothing in it or its purpose to justify a court in holding that such a prohibition appears by implication.

It is true that the cancellation of such a refusal removes that which puts in motion the statute's limitation on the time within which an action on the claim can be brought, but all parties interested therein are in the same position they would have been had the railroad not refused payment in the first instance but had held the claim for further consideration. Had this refusal not been withdrawn the appellant presumably would have brought this action within the stipulated time thereafter.

The delay in bringing it was brought about by affirmative action by the appellee and to now permit it to effectively plead this delay as a bar to the action does not square with my conception of honesty and fair dealing—with that which the statute was enacted to insure. I will continue to so think until the Supreme Court of the United States, the final arbiter in this matter, decides to the contrary.

**Ethridge, J.**, concurs in this opinion.