**JOHN MORRELL & COMPANY,**
Plaintiff-Appellee,

v.

**CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY,**
Defendant-Appellant.

No. 72–2022.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1973.

Decided March 13, 1974.

Rehearing Denied April 24, 1974.

Bruce C. Spitzer, Chicago, Ill., for defendant-appellant.

Marvin H. Ruttenberg, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge and CAMPBELL*, Senior District Judge.

KNOCH, Senior Circuit Judge.

Defendant-Appellant, Chicago, Rock Island and Pacific Railroad Company, has appealed from grant of motion for summary judgment in favor of plaintiff-appellee, John Morrell & Company, based on the pleadings and stipulated facts.

Plaintiff shipped a consignment of fresh pork bellies under a Uniform Bill of Lading to Armour and Company in South San Francisco, California, on September 9, 1967. Defendant transported this shipment from Estherville, Iowa, to Santa Rosa, New Mexico, where it was interchanged with Southern Pacific Railroad Company. When the shipment arrived it was refused by Armour and Company because it was in damaged condition.

Plaintiff filed its claim on September 28, 1967, with the Southern Pacific Railroad Company. This action was filed on September 13, 1971. The only issue before the District Court was whether the suit was barred by the Interstate Commerce Act, Title 49 U.S.C.A. § 20(11) and § 2(b) of the Uniform Bill of Lading Contract which provides that suit may be instituted against the carrier only within two years and one day from the day when notice in writing has been given to the claimant that the carrier has disallowed the claim.

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Defendant contends that this action was untimely filed because the letter of February 19, 1968, from Southern Pacific's General Freight Claim Agent advised plaintiff's Claim Manager that:

The loading method used was the sole cause of the inadequate refrigeration of this load and the resulting deterioration and loss. Inasmuch as loading was done by the shipper, no liability for improper loading rests with the carriers.

In the circumstances, have no option but to hereby disallow the claim.

Further correspondence ensued wherein the claimant referred to deviations from normal delivery time and the carrier requested *additional information* on receipt of which "further consideration" was promised. Ultimately the carrier conceded that the loading was not, as stated in the February 19, 1968, letter, the sole cause of damage, but that some part of the damage was due to carrier's delay in delivery. In response to plaintiff's letter of October 8, 1968, asking:

In the event your position is to disallow this claim, we would appreciate a phone call from you in the next few days.

Southern Pacific wrote on December 6, 1968:

While it is evident that the primary cause of the condition noted at destination was the failure to load the meat in such a manner as to permit proper refrigeration during transit, we must agree that deterioration would progress each day under load. As indicated above, this shipment should have been delivered September 15, or six days after forwarded, and as a result of carrier delay, actual delivery was not offered until September 19, the tenth day. Based upon this, $\frac{4}{10}$'s of the total loss might reasonably be considered as resulting from carrier delay. This, of course, does not consider the owner's failure to minimize the loss; however, in an effort to resolve all doubt in your favor, and dispose of this unfortunate matter on as equitable a basis as possible, we are agreeable to a settlement in the amount of $5,649.12, based upon the above formula. Your authority to so amend will be appreciated, and will enable us to arrange for issuance of a voucher.

In the interim there were letters from the carrier apologizing for the delay in reply and asking claimant's kind indulgence, which would support the District Judge's view that carrier did not regard the claim as having been unequivocally disallowed. Although claimant had asked on October 8, 1968, to be advised within a few days by telephone if carrier's position was to disallow, the letter of December 6, 1968, in answer to that query made no reference to any purported disallowance of February 19, 1968.

On September 26, 1969, after an oral offer of $7,000 was rejected by the claimant, the carrier wrote:

[W]e have no option but to affirm our offer of $5,649.12, disallowing the remainder.

That letter referred to telephone calls and to prior letters of May 10 and December 6, 1968, which conceded partial liability but made no reference to the purported earlier disallowance of February 19, 1968.

The District Judge interpreted the wording in the letter of February 19, 1968, "in the circumstances", to mean that as the loading by the shipper was the sole cause of damage, no carrier's liability existed and as these "circumstances" were not in fact true and as the subsequent correspondence showed that the parties did not consider the February 19, 1968, letter a final and unequivocal but only a qualified disallowance, the Trial Judge held that the limitations period did not begin to run until such unequivocal disallowance was given to the claimant, and that the suit was therefore timely filed.

The District Judge interpreted the letters as clearly keeping the door open for further negotiations and not as showing a disallowance which was either re-

opened or later waived, which would not be permissible to stop the running of the statute under the Act.

Defendant argues that the District Judge imposed a higher standard than required by the Uniform Bill of Lading Contract which calls merely for notice to the claimant that the carrier has disallowed the claim to begin the running of the period and that the claimant's response that it was unbelieveable that Southern Pacific was admitting no liability and wanted to disallow the claim indicated that the February 19, 1968, letter was understood as a disallowance without reference to the reasons for such disallowance. Defendant cites a number of cases with which the plaintiff has no quarrel, in which informal language has been held to be sufficient, including Cohen v. Texas and New Orleans, R. Co., 1940, 303 Ill.App. 606, 614, 25 N.E.2d 562, 565, where there was also a question as to when the claim was filed, where the Court said that the reasons which impelled the carrier to disallow were immaterial.

Whether the disallowance was proper has been held irrelevant, the material question being whether the notice made it clear that the claim as submitted would not be honored. Rouw v. Texas & N. O. R. Co., 1953, Tex.Civ.App., 260 S. W.2d 130, 132. The District Judge agreed with defendant's authorities that once disallowance has been made, subsequent correspondence does not halt the running of the limitations period. L. M. Kirkpatrick Co. v. I. C. R. Co., 1940, 190 Miss. 157, 195 So. 692, 694; Holford v. Louisville & N. R. Co., W.D.Tenn., 1967, 266 F.Supp. 408, 409. However, he agreed with the plaintiff's argument that the carrier itself did not consider the February 19, 1968, letter a disallowance because, as indicated in the whole series of communications by telephone and letter, no reference was made to it until September 14, 1970, when the car-

rier wrote that the claim was time-barred. Plaintiff points to the language used in the cases cited by defendant which refer to "clear",[1] "definite",[2] and "unequivocal"[3] denials and invites our attention to Robinson v. Trustees of N. Y., N. H. & H. R. Co., 1945, 318 Mass. 121, 60 N.E.2d 593, 598, where the issue involved was which of two letters started the period running. The Court there held that the first letter did not constitute a final declination of the claim but left the door open for further consideration. In reaching that decision, the Court relied in part on the continuing correspondence between the parties. To the same effect is Chappell v. New York and O. W. Ry. Co., 1936, 248 App.Div. 804, 289 N.Y.S. 52, 53.

In carrier's letter of February 3, 1970, in response to claimant's offer of January 28, 1970, to reduce the claim by $750, carrier affirms the prior oral offer of $7,000 and promises prompt issue of voucher if claimant will authorize amendment of the claim. No reference is made to the time limitation as about to elapse in a few days. Only on September 14, 1970, was this point raised in answer to a counter-demand of August 31, 1970.

Defendant would have us consider the letter of February 19, 1968, by itself, without regard to the subsequent correspondence, as a clear denial stating surplusage in the form of reasons which may have been inapt, but which were nevertheless irrelevant. We do not think we may so view this letter which, in effect, merely states that the carrier has no option but to disallow where it has no liability. There is a lack of clear finality which requires resort to the subsequent correspondence for clarification. The District Judge's characterization of the letter as a "qualified" disallowance leaving the way open for negotiation was reasonable.

---

1. Atlantic Coast Line R. Co. v. Wauchula Truck Growers Ass'n., 1928, 95 Fla. 392, 118 So. 52, 53.

2. Decker & Sons v. Director General, 1919, 55 I.C.C. 453, 460.

3. Holford v. Louisville & N.R. Co., *supra*.

Our own study of the record here leaves us with the conviction that the District Court's determination in this cause must be affirmed.

SWYGERT, Chief Judge (dissenting).

The majority holds that the railroad's letter of disallowance dated February 19, 1968 lacks "clear finality" necessitating "resort to . . . subsequent correspondence for clarification." In that letter the railroad notified the plaintiff: "In the circumstances, have no option but to hereby disallow the claim." The majority finds that it is reasonable to characterize "the letter as a 'qualified' disallowance leaving the way open for negotiation."

I cannot agree with the majority's characterization of the letter as lacking "clear finality." But, even accepting the majority's finding that the letter amounted to a "qualified" disallowance, I would hold that such a disallowance is sufficient to meet the requirements of the statute. The pertinent portion of section 2(b) of the Uniform Bill of Lading Contract provides:

[S]uits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid.

The statute does not demand the degree of specificity that the majority reads into it. Indeed, there is no requirement that the notice of disallowance be utterly and completely unequivocal.

The majority recognizes the substantial authority which holds that negotiations subsequent to a disallowance do not toll the running of the limitations period. To blunt the impact of those decisions the majority characterizes the disallowance as "qualified" and not sufficient to meet the standard they impose, namely, an unequivocal disallowance. In so doing, the majority has created an unwieldly standard in this area of notices of disallowance. It is an amorphous standard that turns on distinctions of degree between a qualified and an unequivocal disallowance. Such distinctions will lead to arbitrary and inconsistent conduct and treatment with respect to the affairs of shippers and their customers. Moreover, the distinctions clearly run counter to the Interstate Commerce Act's intent to eliminate any type of discriminatory and nonuniform treatment among carriers and their customers.

The plaintiff in a letter dated September 28, 1967 made its claim for damages. The railroad responded on February 19, 1968 stating that, "In the circumstances, have no option but to hereby disallow the claim." The railroad's response was sufficient to put the plaintiff on notice that its claim as tendered would not be met on first inquiry and, at best, all or part of plaintiff's claim would be met only upon additional inquiry by the plaintiff. The railroad's February 19 letter clearly was not a complete acceptance of the plaintiff's demands. Consequently, the February 19 letter functioned, at least, as a triggering device for subsequent negotiations; negotiations which—to facilitate the statute's purposes of encouraging the expeditious settlement of disputes and avoiding stale claims—should have been completed within two years and a day. I would hold that the February 19 letter served as an objective benchmark by which to measure the timeliness of plaintiff's suit. As such it provided a much more suitable benchmark to determine if there has been adequate notice of disallowance than an endeavor that would venture into the realm of subjective intentions of the parties seeking to discern if the disallowance was total and unequivocal or partial and tentative.