**COMBUSTION ENGINEERING, INC.,**
Plaintiff-Appellant,

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant-Appellee.

No. 1369, Docket 84-7222.

United States Court of Appeals,
Second Circuit.

Argued June 18, 1984.

Decided Aug. 13, 1984.

John S. Pinney, Bloomfield, Conn. (Pinney & Baram, Bloomfield, Conn., of counsel), for plaintiff-appellant.

John W. Sitarz, Hartford, Conn. (Cooney, Scully & Dowling, Hartford, Conn., of counsel), for defendant-appellee.

Before MANSFIELD, MESKILL and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The question on this appeal is whether the notice of disallowance of a claim made pursuant to a Uniform Straight Bill of Lading started the running of the limitations period. Plaintiff Combustion Engineering, Inc. (Combustion) appeals from a decision of the United States District Court for the District of Connecticut (Dorsey, J.), entering summary judgment for the defendant Consolidated Rail Corporation (Conrail) on the ground that plaintiff's claim for damages was time-barred. We reverse the grant of judgment and remand this case.

I

In May 1977 certain equipment belonging to Combustion was damaged in the course of transport by Conrail. As a result during the next six months, the following correspondence passed between Combustion and Conrail. On July 29, 1977 Combustion filed with Conrail a notice of claim regarding the damage to its goods. This initial notice did not include any details as to the amount of damages sustained. On August 3 Combustion wrote that its load of fuel economizers had been damaged to the extent of "$1000, or more or less" and that supporting documentation would follow. On October 5

Conrail acknowledged Combustion's claim for $1000 in a written "Statement of Loss and Damage Claim Activity" form (Claim Activity form), which classified the claim as an "interim statement of a new claim." Later in October Conrail issued another Claim Activity form, changing the classification of Combustion's claim to "active." On November 15 Conrail wrote to Combustion and—referring to the July 29 claim—stated that "[i]t is necessary that we have itemized bill together with required documents to support your claim. Claim as presented is disallowed." Combustion answered two weeks later, on November 29, and said that it was "still in the process of gathering [its] paperwork together. As soon as the supporting documents are assembled and the total costs are determined they will be forwarded to you." Aside from subsequent periodic Claim Activity forms issued by Conrail, which continued to classify Combustion's claim as "active," there was no further correspondence over the next 11 months. Then, in the last three months of 1978, four exchanges occurred.

On October 20, 1978 Combustion filed a statement claiming total damages of $19,-986.91. Conrail promptly responded on October 31 sending the first page of a Freight Claim Investigation Inquiry Form (Form FC–3) and requesting that Combustion "[p]lease furnish detailed breakdown showing how repair cost determined. This should include number of men worked, hours worked, rate per hour, cost of material used supported with invoices." In response, Combustion on December 18 said it was unable to furnish a more detailed breakdown of the repair costs and that it hoped the invoices and supporting documents previously sent would be sufficient to conclude the processing of the claim. On December 28 Conrail's answer to this inability to supply a breakdown was:

Your reply ... stated you unable to furnish breakdown of material and men and also labor cost. These items are required so as we can verify the validity of

the claim. Also the invoice you furnished shows $18,630, does this cover items damaged or the total price to you, as claim covers repairs or replacement to parts. If just for damage please furnish copy or original invoice showing amount you were billed for this shipment. Upon receipt of the above requested documents claim will be given further consideration.

A flurry of more of the same type of correspondence continued through the first half of 1979. On January 5, 1979, the date that Combustion received the December 28 letter, it also received the second page of a Form FC–3. Labeled as a "tracer", the FC–3 was a copy of the October 31 form and it indicated that no response had been received from the original inquiry and that "if no response is received, claim is considered disallowed effective thirty days from date of this tracer." On January 10, Combustion received yet another Claim Activity form from Conrail showing that its claim was "active." On March 19 Conrail again wrote to Combustion advising that it had not received a reply to its letter of December 28. In attaching a copy of the December 28 letter, Conrail indicated that "Without the information requested, we cannot progress the handling of this claim; therefore, I regret to advise it is respectfully disallowed."

Combustion responded on May 7. In its letter Combustion stated that it could not provide a detailed breakdown of the labor hours because this was proprietary information; nonetheless, Combustion certified that its invoice was true and correct in every respect. Combustion concluded by stating that Conrail should forward a draft in the amount of $19,986.81. Conrail evidently did not view this information as sufficient since, on June 13 and again on July 19, it sent identical copies of another Form FC–3 to Combustion stating: "In order to further process claim we must have a breakdown of labor charges, rates per

hour, etc. Also invoice to cover material used and advise if scrapped material has a salvage value or what disposition was made of it." Conrail received no response to these inquiries. Nevertheless, as late as August 31 it sent another Claim Activity Form advising Combustion that its claim was still "active."

## II

On March 17, 1981 Combustion filed suit against Conrail pursuant to 49 U.S.C. § 11707 for damages in the amount of $19,986.81. Conrail's answer interposed the affirmative defense that the lawsuit was untimely because it was not instituted within two years and one day from the date Conrail disallowed Combustion's claim. Conrail thereafter filed a motion for summary judgment, alleging that there was no issue of material fact regarding the untimeliness of Combustion's complaint. In opposing the motion, Combustion argued that material issues of fact existed, *i.e.*, that the action was timely because "the totality of [Conrail's] conduct", including Conrail's notices and letters, did not afford it clear, final, and unequivocal notice that its claim had been disallowed. The matter was submitted to a magistrate who recommended that Conrail's motion be denied. In his view a continuing course of communications had existed from July 1977 through August of 1979. In viewing the inferences in favor of the party opposing summary judgment, the magistrate found it "unclear" precisely when the claim was disallowed. Therefore, he concluded that a question of fact existed as to whether there was a clear and unequivocal disallowance more than two years and one day prior to the commencement of this lawsuit.

Upon the motion to confirm, the district court refused to adopt the magistrate's recommendation and conducted a *de novo* review of the motion. Following its review the district court judge granted summary judgment to Conrail. The court held that it

was not inconsistent for a carrier to invoke the protection of a cutoff date and at the same time continue to process the claim. Focusing on whether the November 15, 1977 notice adequately informed Combustion that the period of limitations had begun, the district court found that letter to be sufficient and rejected the suggestion that the carrier's post-notice conduct contra-indicated that the time period for filing suit was running. Since the lower court found the lawsuit untimely, it entered a judgment dismissing Combustion's claim. This appeal followed.

### III

■ A motion for summary judgment properly lies in cases where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). We agree with the district court that there is no material issue of fact concerning the November 15, 1977 notice of disallowance of the claim. The letter speaks for itself. The open question involves a legal conclusion, whether Conrail is entitled to judgment as a matter of law. To answer that question in the affirmative, as the district court did, we would have to conclude that the notice of disallowance was clear, final, and unequivocal. We do not believe that it was and we reverse the judgment entered by the court below and remand for further proceedings.

### IV

■ 49 U.S.C. § 11707(e) (Supp. IV 1980) provides, in pertinent part, that:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than two years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

Pursuant to § 11707, section 2(b) of the Uniform Straight Bill of Lading provided that:

suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

The sole issue therefore is whether Conrail's written notice of disallowance of November 15, 1977 was sufficient to trigger the limitations period printed in the bill of lading and render this action untimely. Inasmuch as § 11707 gives the carrier the power to fix the time when the limitations period begins to run against a shipper, courts have generally held that in order effectively to commence that period of limitations, a carrier's notice of disallowance must be clear, final, and unequivocal. *Cordingley v. Allied Van Lines, Inc.*, 563 F.2d 960, 964 (9th Cir.1977) (*Cordingley*); *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3d Cir.1976) (*Polaroid*); *John Morrell & Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 495 F.2d 331, 333 (7th Cir.1974) (*Morrell*).

It has also been held that once an effective—that is, a clear and unequivocal—disallowance has been made, subsequent correspondence between the parties does not halt the running of the limitations period. *See, e.g., Burns v. Chicago, M., St. P. & Pac. R. Co.*, 192 F.2d 472, 473, 476 (8th Cir.1951) (where railroad rejected a shipper's claim, except for "$450 for which voucher can be prepared immediately, the balance of the loss being respectfully disal-

lowed," disallowance was held sufficient to trigger the limitations period regardless of subsequent negotiations); *Cammack v. Trans World Airlines, Inc.,* 482 F.Supp. 914, 916–17 (W.D.Mo.1979) (following *Burns*); *B.F. Goodrich Tire Co. v. Louisville and Nashville Railroad Co.,* 439 F.Supp. 363, 364 (S.D.N.Y.1977) (letter of disallowance found to be unequivocal where it stated that it was "unable to give [the] claims favorable consideration" and that the railroad, "acting in its own behalf and as agent for any other carriers involved in these shipments, hereby declines your claims"). Thus, under the terms of the bill of lading Combustion's suit against Conrail is barred only if Conrail's letter of November 15, 1977 constituted an *effective* disallowance of the claim. *Compare Cordingley, supra,* 563 F.2d at 963 ("totality of the carrier's conduct" led court to the conclusion that original letter did not constitute a disallowance); *Morrell, supra,* 495 F.2d at 333 (statute of limitations did not begin to run where court characterized letter disallowing the claim as "qualified") *and Capon Textile Trading Co. v. Consolidated Rail Corp.,* 538 F.Supp. 1083, 1085 (S.D.N.Y.1982) (notice not clear, final, and unequivocal where letter made reference to a communication from the shippers indicating that certain documentation was being provided for the purpose of processing the claim) *with Westhemeco Ltd. v. New Hampshire Ins. Co.,* 484 F.Supp. 1158, 1161–64 (S.D.N.Y.1980) (railway's letter indicating that it was "prohibited by law from making any payment" held to be a clear, final and unequivocal notice of disallowance) *and H. Rouw Co. v. Texas & N.O.R. Co.,* 260 S.W.2d 130, 131–32 (Tex. Civ.App.1953) ("[T]here can be no doubt but that the railroad company disallowed a part of the claim filed by appellant" where the railroad wrote a letter authorizing payment of a certain amount with "[a]ny amount in excess ... respectfully declined.").

In ruling in favor of Conrail, the district court considered the letter to be sufficiently clear, final, and unequivocal as to constitute a proper disallowance. We cannot agree. The November 15 letter by its own terms stated that Conrail did not have sufficient documentation with which to process Combustion's claim. In noting the need for an itemized bill together with further supporting information, Conrail merely indicated that the claim *as presented* was disallowed. Hence, the November 15 letter plainly failed unequivocally and finally to reject any part of Combustion's claim for its damaged cargo. When Conrail referred to Combustion's claim of July 29—which included no details surrounding the loss—it said that additional information must be forwarded to support Combustion's damage claim. From the "as presented" language used, it is evident that the subsequent presentation of adequate documentation would enable Conrail to process the claim in a routine fashion. While it has been held that the word "disallowed" need not be used in the notice of disallowance so long as the terms used sufficiently conveyed to the claimant the fact that the claim is disallowed, *Polaroid, supra,* 541 F.2d at 1011, & n. 4, (citing cases), it is equally clear that use of the term "disallowed" does not in and of itself have the talismanic effect of satisfying the requirement that the carrier's notice be clear, final, and unequivocal. *See, e.g., Morrell, supra,* 495 F.2d at 332–33. In this connection carriers must make clear to claimants that the right of disallowance has definitely been exercised. It should not be a difficult task to draft a notice in words plain enough to signal that intent so clearly as to be understood in only one way. When the carrier uses words that are susceptible of more than one meaning, it increases the risk that later it will be found not to have started the time limitations clock ticking. Here, we conclude that the language employed by Conrail in its letter of November 15 did not operate as a clear, final and unequivocal disallowance.

Further support for the fact that the letter was not a final disallowance is found

in Conrail's use of its automated processing records. In the 21 months following Combustion's receipt of the November 15 letter, Conrail sent several status reports to Combustion in which it continued to categorize the claim as an active one. If Combustion's claim had in fact been disallowed, a notation to that effect should have been noted on these status reports. Even assuming that these forms were spewed from a computer, it was still incumbent upon Conrail to ensure that the information transmitted by its electronic bureaucracy was not misleading to its claimant-shippers. Moreover, in at least two subsequent handwritten communications, Conrail insisted upon the need for other detailed documentation. Thus, we cannot agree with the district court's conclusion that Conrail intended the November 15 letter to operate as a final disallowance of Combustion's claim. If anything, it would seem from the slim record we have that Conrail finally disallowed plaintiff's claim within the meaning of § 11707(e) by letter dated March 19, 1979. Nonetheless, it is immaterial at what later date the claim was effectively disallowed. Suit was instituted within two years of any subsequent written notice of disallowance from Conrail to Combustion.

Accordingly the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.