**BURTMAN IRON WORKS, INC., Plaintiff,**

v.

**CON–WAY TRANSPORTATION SERVICES, INC., Defendant.**

No. Civ.A.98–11391–RBC.[1]

United States District Court, D. Massachusetts.

March 31, 2000.

---

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Philip A. Tracy, Jr., DiMento & Sullivan, Boston, MA, for plaintiff.

Wesley S. Chused, Looney & Grossman, LLP, Boston, MA, for defendant.

### MEMORANDUM AND ORDER ON DE-FENDANT'S MOTION FOR SUM-MARY JUDGMENT (# 16)

COLLINGS, Chief United States Magistrate Judge.

#### I. Introduction

On June 22, 1998, the plaintiff Burtman Iron Works, Inc. (hereinafter "Burtman"), a Massachusetts corporation, filed a two-count complaint in the Boston Municipal Court against defendant Con–Way Transportation Services, Inc. (hereinafter "Con–Way"), a foreign corporation. Approximately three weeks later, on or about July 15, 1998, the action was removed to federal court. Con–Way thereafter filed its answer on July 28, 1998.

According to the allegations of the original complaint, Burtman contracted with Con–Way, an interstate motor carrier, to transport certain parcels on the plaintiff's behalf. It was claimed the defendant negligently handled those parcels, and also that the defendant breached its contract with the plaintiff by failing to transport the parcels with sufficient care. As a result of Con–Way's purported negligence and breach of contract, Burtman asserted that it was "greatly damaged".

After the close of discovery, the defendant filed a motion for summary judgment that incorporated a concise statement of material facts as to which there is no genuine issue to be tried. (# 16) Con–Way has also submitted a memorandum of law (# 19) and two affidavits ( 17, 18) in support of its dispositive motion. In due course Burtman filed its response in opposition to the defendant's motion (# 20) together with a memorandum in support of its opposition (# 21) and an affidavit of counsel (# 22).[2]

Argument on the summary judgment motion was heard on August 25, 1999. At that hearing, it was conceded that the plaintiff's state law claims were pre-empted by federal law,[3] and Burtman was ordered to file an amended complaint alleging a single claim under the Carmack Amendment to the former Interstate Commerce Act, 49 U.S.C. § 14706. In turn, the defendant's then pending dispositive motion was deemed to be seeking the entry of judgment as a matter of law on the to-be-filed amended complaint. After hearing, the Rule 56 motion was taken under advisement. The amended complaint (# 24) was filed in mid-September, 1999, and, with the record now complete, the defendant's motion for summary judgment stands in a posture for decision.

#### II. The Facts

As a consequence of Burtman's failure to comply with Local Rule 56.1, the "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties ..." Thus this factual recitation shall rely extensively upon the defendant's concise statement of material facts. In any event,

---

**2.** Burtman has failed to file "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried" as required by Local Rule 56.1.

**3.** *See* Memorandum In Support Of Opposition # 21 at 1.

of course, the facts shall be viewed in the light most favorable to the non-moving party.

Con–Way has proffered evidence to establish both the terms of the applicable bill of lading and that those terms govern this transaction. Although no legal argument has been raised with respect to these issues, they are fundamental to proving the defendant's eleventh affirmative defense [4] upon which the dispositive motion is premised. In the absence of any controversy, these foundational facts shall be quoted verbatim at length: [5]

1. In October/November 1995 Con–Way operated, and still operates, as a motor carrier of general commodities in interstate commerce pursuant to a certificate issued to Con–Way by the Former Interstate Commerce Commission ("ICC"), now the Federal Highway Administration.

2. As an interstate motor carrier, Con–Way maintains tariffs and classifications which govern its transportation operations and the bills of lading issued by Con–Way for its interstate transportation services.

\*    \*    \*    \*    \*    \*

5. Con–Way issued a Uniform Straight Bill of Lading for its transportation of the [Burtman] shipment.

6. Con–Way's bill of lading provided that the shipment was received subject to Con–Way's tariffs and classifications, the National Motor Freight Classification, and that every service to be performed under that bill of lading was subject to the bill of lading terms and conditions in the governing classification.

7. The bill of lading for Burtman's shipment contained the following language:

RECEIVED, subject to the classifications and tariffs in effect on the date of issue of this Original Bill of Lading, the property described below . . .

Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment and the said terms are hereby agreed to by the shipper and accepted for himself and his assigns.

8. Con–Way's classification, ICC NMF 100–V, at p. 256, sets forth the Uniform Straight Bill of Lading terms and conditions. Sec. 2(b) of those terms and conditions provides that as a condition precedent to recovery, claims (for loss or damage to the shipment) must be filed with the receiving or delivering carrier within nine months after delivery of the property, and that,

. . . suits for loss, damage, injury or delay shall be instituted against any carrier no later than two years and one day from the day when written notice is given by the Carrier to the claimant that the Carrier has disallowed the claim or any part or parts of the claim specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier shall be liable, and such claims will not be paid.

9. These two time limits, nine months for claim and two years and one day from date of declination for lawsuits, have been the standard in the trucking industry since about the turn of the century.

Defendant's Motion For Summary Judgment # 16, Concise Statement of Material Facts ¶¶ 1, 2, 5–9 (hereinafter "Concise Statement").

---

4. This is the eleventh affirmative defense in the defendant's answer to the original complaint (# 2). No answer has been filed to the amended complaint.

5. The citations to the record evidence shall be omitted.

Turning now to the historical facts, in October of 1995 Con–Way received a shipment of freight consisting of stainless steel trays and equipment from Sidewalk Sales, Inc. in East Hanover, New Jersey for transportation to Burtman in Massachusetts. (Concise Statement ¶ 3) Due to damage that allegedly occurred during transit, this shipment was returned to the defendant at least once.[6] (Concise Statement ¶ 4) In a letter dated December 27, 1995, Burtman filed a claim for damage to the trays and equipment in the amount of $10,755.00, the total sales price for the goods in the shipment. (Concise Statement ¶ 11; Affidavit of Wesley S. Chused # 17, Exh. D ¶¶ 4, 6; Affidavit of James A. Riddle # 18 ¶ 15 and Exh. D) A senior claims examiner at Con–Way acknowledged receipt of the plaintiff's cargo claim via a letter dated March 6, 1996. (Concise Statement ¶ 12; # 17, Exh. D ¶ 8 and Exh. 3) By letter dated April 1, 1996 the defendant denied the plaintiff's claim in writing,[7] stating:

Our examination of your claim has shown that this shipment was received from the shipper and delivered to the consignee without exception to condition. A clear delivery receipt from the consignee affirms delivery "in good order." When a damage claim is filed on a shipment delivered without exception, the claimant must provide evidence that overcomes the clear delivery record and demonstrates that damage occurred during transit.

We regret any difficulty you may have experienced with the contents of this shipment. However, in view of clear delivery record and in the absence of

documentation showing carrier liability, we have no alternative other than to deny payment of your claim.

Affidavit of Wesley S. Chused # 17, Exh. D ¶ 4 and Exh. 4.[8]

Con–Way received a second demand, this time from Burtman's counsel, in a letter dated April 29, 1996. (# 17, Exh. D ¶ 11 and Exh. 5) In substantive part this letter reads:

This law firm has been retained by Burtman Iron Works, Inc., to seek redress for goods damaged by the negligence of Con–Way Transportation Services, Inc. [ ], its agents or employees.

Due to this mishandling of items shipped by [Con–Way] on behalf of Burtman Iron Works, Inc., damage occurred to metal goods intended for a recipient in New York. The items required complete replacement. [Con–Way's] inspection reports clearly display the damage and the fact that such damage occurred while the goods were in custody and control of [Con–Way].

On December 27, 1995 demand for costs related to replacement of the goods was made by Burtman Iron Works, Inc. These demands have been ignored.

Please provide payment on or before May 15, 1996 to avoid a lawsuit which will include claims for Interstate Commerce Commission intervention together with claims for attorney's fees, costs, and interest.

Affidavit of Wesley S. Chused # 17, Exh. D ¶ 11 and Exh. 5.

---

6. In the amended complaint Burtman alleges that between October and December of 1995 the shipment was rejected on three separate occasions, and that additional costs were incurred when Burtman unsuccessfully attempted to repair the dents and scratches that resulted from the alleged mishandling. (Amended Complaint # 24 ¶¶ 4–15)

7. In response to the defendant's Request For Admissions, Burtman admitted "[t]hat Con-

Way denied Burtman's claims by letter dated April 1, 1996." (# 17, Exh. D ¶ 9)

8. In response to the defendant's Request For Admissions, Burtman admitted "[t]hat the document attached at Exhibit 4 hereto is a true and accurate copy of Con–Way's April 1, 1996 letter to Burtman declining Burtman's claim." (# 17, Exh. D ¶ 10)

Responding by letter dated May 23, 1996, Con–Way enclosed a copy of its April 1st correspondence and repeated the denial of Burtman's claim. (Concise Statement ¶ 14; # 17, Exh. D ¶ 12 and Exh. 6; # 18, Exh. H) The May 23rd letter reiterated the grounds for the earlier denial:

A prerequisite to payment of a freight claim is a showing of carrier liability. A delivery receipt which shows no notation of damage or exception to condition is prima facie evidence of delivery in good order.

To date, we have received no rebuttal to our declination and no evidence overcoming our clear delivery record. Your letter of 4/29/96 adds no new information to this file. In absence of evidence demonstrating carrier liability, we have no alternative other than to maintain our declination and deny payment.

Affidavit of Wesley S. Chused # 17, Exh. D ¶ 12 and Exh. 6; # 18, Exh. H.

In a letter dated June 12, 1996, plaintiff's attorney acknowledged receipt of Con–Way's "May 23, 1996 denial of the [Burtman] claim" and then proffered "certain facts which may aid your understanding of our position regarding liability." (Affidavit of Paul T. Prew # 22, Exh. 1) According to Attorney Prew, the subject shipment was rejected on three separate occasions between October and December of 1995. (# 22, Exh. 1) The first two rejections occurred on October 27th and November 3rd of 1995 respectively; on both occasions the shipments arrived in damaged condition allegedly consequent to Con–Way's handling. (# 22, Exh. 1)

The letter further explained that Burtman again attempted to repair the damage after which a third delivery was made on November 16, 1995. (# 22, Exh. 1) Although not immediately rejected, when the customer determined that the repairs to the stainless steel trays and equipment were not completed to its satisfaction, the shipment was returned to the plaintiff via Con–Way on December 4, 1995.[9] (# 22, Exh. 1) Burtman ended up replacing the entire order in March of 1996, shipping the items in the same manner, and wrapping and skidding them in the same way.[10] (# 22, Exh. 1) Attorney Prew's letter closed with the statement "[w]e hope this sheds some light on your investigation and expect prompt payment to be tendered within ten (10) days of your receipt of this letter." (# 22, Exh. 1)

No payment was forthcoming from Con–Way, and Burtman ultimately filed suit on June 22, 1998.

Because of the age of Burtman's shipment, Con–Way has been unable to locate all of the bills of lading and documents relating to the plaintiff's claim. (# 18 ¶ 6) Nevertheless there is no dispute that a true and accurate copy of the November 3, 1995 bill of lading, which describes an interstate shipment of parcels by a common carrier, has been submitted for consideration. (# 17, Exh. D ¶ 3 and Exh. 1) Further, the delivery receipt for the Burtman shipment that Con–Way delivered on November 17, 1995, reflects that the freight was received "in good order except as noted" with no exceptions being noted. (# 18 ¶ 14 and Exh. C)

## III. The Summary Judgment Standard

When considering whether to grant summary judgment, the Court must determine whether:

... the pleadings, depositions, answers to interrogatories, and admissions on

---

9. While Attorney Prew references certain enclosures, i.e., inspection reports, in support of Burtman's claim, these documents have not been submitted to the Court.

10. Attorney Prew laid out a timetable of these events as follows:

10/27 Original shipment

10/30 Returned not acceptable original shipment
11/03 Redelivered after repair attempt
11/08 Returned not accepted
11/16 Redeliver
12/04 Returned, not accepted
Affidavit of Paul T. Prew # 22, Exh. 1.

file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.,* 103 F.3d 196, 205 (1 Cir., 1996); *see also Lawton v. State Mut. Life Assurance Co. of America,* 101 F.3d 218, 222–23 (1 Cir., 1996); *Borschow Hospital and Medical Supplies v. Cesar Castillo, Inc.,* 96 F.3d 10, 12 (1 Cir., 1996); *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 253 (1 Cir., 1996); *One Nat'l Bank v. Antonellis,* 80 F.3d 606, 608 (1 Cir., 1996).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine", the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25 (1 Cir., 1997); *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1 Cir.1996); *Roche,* 81 F.3d at 253. In weighing whether a factual dispute is "material", the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Vinick v. Commissioner of Internal Revenue,* 110 F.3d 168, 171 (1 Cir., 1997); *Sanchez,* 101 F.3d at 227; *Roche,* 81 F.3d at 253. "Thus the substantive law defines which facts are material." *Sanchez,* 101 F.3d at 227 (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. *See Int'l Ass'n of Machinists and Aerospace Workers,* 103 F.3d at 205 (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1 Cir. 1992)), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993) ("The core purpose of the summary judgment procedure is to 'pierce the boilerplate of the pleadings' and evaluate the proof to determine whether a trial will serve any useful purpose."). Rather, Rule 56(c):

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### V. Discussion

The single issue before the Court for resolution is whether the plaintiff's claim is time barred by the Carmack Amendment. In pertinent part, the Carmack Amendment provides:

**(e) Minimum period for filing claims.—**

**(1) In general.**—A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

**(2) Special rules.**—For the purposes of this subsection—

(A) an offer of compromise shall not constitute a disallowance of any part of the claim unless the carrier, in writing, informs the claimant that such part of

the claim is disallowed and provides reasons for such disallowance; and

(B) communications received from a carrier's insurer shall not constitute a disallowance of any part of the claim unless the insurer, in writing, informs the claimant that such part of the claim is disallowed, provides reason for such disallowance, and informs the claimant that he insurer is acting on behalf of the carrier.

Title 49 U.S.C. § 14706.

It is uncontroverted that Burtman filed a claim with Con–Way on December 27, 1995, well within the nine month statutory time period for submitting such a claim. (Concise Statement ¶ 11) Thus, disposition of this motion turns on the second proviso of § 14706(e)(1), to wit, whether Burtman filed this civil action within the two year time limitation imposed by the Carmack Amendment. Put in different terms, the inquiry is whether Con–Way provided Burtman with written notice that its December 27th claim had been disallowed more than two years prior to the filing of the complaint in the Boston Municipal Court on June 22, 1998.

■ The parties agree that the applicable standard is that enunciated in the case of *Combustion Engineering, Inc. v. Consolidated Rail Corp.* wherein the court determined that in order for the two year and one day limitation under Section 2(b) of the bill of lading to commence, "a carrier's notice of disallowance must be clear, final, and unequivocal." *Combustion Engineering*, 741 F.2d 533, 536 (2d Cir.1984) citing *Cordingley v. Allied Van Lines, Inc.*, 563 F.2d 960, 964 (9 Cir., 1977); *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3 Cir., 1976); *John Morrell & Co. v. Chicago, Rock Island & Pacific R.R. Co.*, 495 F.2d 331, 333 (7 Cir., 1974); *see also DiPaolo Machine Works, Ltd. v. Prestige Equipment Corp.*, 998 F.Supp. 229, 234 (E.D.N.Y.1998).

In the *Combustion Engineering* case, a carrier allegedly damaged equipment during shipment. The court focused on a denial letter outside of the statutory period which stated: "[i]t is necessary that we have itemized bill [sic] together with required documents to support your claim. Claim as presented is disallowed." *Combustion Engineering*, 741 F.2d at 534. In holding that this language did not constitute an effective disallowance, the court stated that "[i]n noting the need for an itemized bill together with further supporting information, [Consolidated Rail] merely indicated that the claim as presented was disallowed." *Combustion Engineering*, 741 F.2d at 537.

■ Con–Way contends that its April 1st letter to the plaintiff constituted clear, final and unequivocal disallowance of Burtman's claim. Indeed, the April 1st letter is distinguishable from the *Combustion Engineering* letter in that Con–Way's letter stated in no uncertain terms that the shipment was delivered without exception. There was no attempt made to encourage Burtman to supply additional information to demonstrate that damage occurred during transit. Furthermore, unlike the shipper in *Combustion Engineering*, Con–Way did not indicate that Burtman's claim was disallowed "as presented". Rather, Con–Way's letter concluded that "in view of clear delivery record and in absence of documentation showing carrier liability, we have no alternative other then to deny payment of your claim." (# 17, Exh. D ¶ 4 and Exh. 4)

As an example of what might constitute effective disallowance, the *Combustion Engineering* court pointed to language in a subsequent denial letter which stated that "[w]ithout the information requested, we cannot progress the handling of this claim; therefore, I regret to advise it is respectfully disallowed." *Combustion Engineering*, 741 F.2d at 535. This language is analogous to that contained in the April 1st letter which similarly conveys the finality of the disallowance. Both letters note that the information provided up to that point was insufficient and both regretfully advise

the customers that their claims were denied.

Even assuming *arguendo* that the April 1st letter was not a clear, final and unequivocal denial of Burtman's claim, Con-Way's response to the plaintiff's second demand letter dated April 29, 1996 certainly was. The defendant's response on May 23, 1996 stated that the prior declination and denial of payment would stand. (# 17, Exh. D ¶ 12 and Exh. 6) While it noted that Burtman had not sufficiently met its burden to show carrier liability, it went no further. It did not request additional evidence or suggest that such evidence would be considered. The recognition of the claim's deficiencies is not equivalent to a denial of a claim "as presented", neither does it detract from the finality of the denial.[11]

Burtman relies on the decision in *John Morrell & Co. v. Chicago, Rock Island and Pacific Railroad Co.,* 495 F.2d 331, 333 (7 Cir., 1974) wherein a carrier sent a denial letter that stated: "In the circumstances, have no option [sic] but to hereby disallow the claim." *Morrell,* 495 F.2d at 332. While acknowledging that "subsequent correspondence does not halt the running of the statute of limitations", the district court judge characterized the carrier's "letter as a 'qualified' disallowance, leaving the door open for negotiation." *Morrell,* 495 F.2d at 333. The Court of Appeals explained that

> Defendant would have as (sic) consider the letter of February 19, 1968, by itself, without regard to the subsequent correspondence, as a clear denial stating surplusage in the form of reasons which may have been inapt, but which were nevertheless irrelevant. We do not think we may so view this letter which, in effect, merely states that the carrier has no option but to disallow where it

has no liability. There is a lack of clear finality which requires resort to subsequent correspondence for clarification. The District Judge's characterization of the letter as a 'qualified' disallowance leaving the way open for negotiation was reasonable.

*Morrell,* 495 F.2d at 333.

The *Morrell* rationale quite simply does not apply on the facts of the instant case given that, on their face, Con-Way's April 1st and May 23rd letters of denial were not ambiguous or qualified. Those letters constituted, and were in fact considered to be, clear, final and unequivocal denials of Burtman's claim. There is no need to consider any further correspondence in order to clarify their intent.[12]

To summarize, both Con-Way's April 1st and May 23rd letters to Burtman constituted denials of the plaintiff's damage claim which were sufficiently clear, final and unequivocal, thus starting the limitations clock. Burtman's complaint was not filed within the requisite two years and one day mandated by Section 2(b) of the applicable bill of lading and therefore is untimely. Con-Way is entitled to the entry of judgment as a matter of law on the Carmack Amendment Claim advanced in the plaintiff's amended complaint.

### VI. Conclusion

For the reasons stated it is ORDERED that the Defendant's Motion For Summary Judgment be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.

---

11. It is interesting to note that both Burtman and its counsel regarded either the April 1st letter or the May 23rd letter from Con-Way as denials of Burtman's claim. *See* # 17, Exh. D ¶ 9 and # 22, Exh. 1.

12. In the summary judgment record, the only subsequent correspondence between the parties prior to the institution of this lawsuit is the June 12, 1996 letter from Burtman's attorney to Con-Way. (# 22, Exh. 1)