**DIPAOLO MACHINE WORKS, LTD., Plaintiff,**

v.

**PRESTIGE EQUIPMENT CORPORATION, et al., Defendant.**

**No. 96 CV 3195 (SJ).**

United States District Court, E.D. New York.

March 26, 1998.

Herzfeld & Rubin, P.C. by Kathleen Gill Miller, Cary Stewart Sklaren, New York City, for Plaintiff.

Schwartz & Blumenstein by Clifford Schwartz, New York City, for Defendant Trism Specialized Carriers, Inc.

## MEMORANDUM & ORDER

JOHNSON, District Judge.

DiPaolo Machine Works, Ltd. ("Plaintiff"or "DiPaolo") filed suit against Trism Specialized Carriers, Inc. ("Defendant" or "Trism") for breach of contract in failing to safely and properly transport and deliver Plaintiff's boring mill from Houston, Texas to Mississauga, Ontario. Presently before this Court is Defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), which this Court is converting into a motion for summary judgement pursuant to Fed.R.Civ.P. 56(c). For the reasons stated herein, Defendant's motion is granted.

### FACTUAL BACKGROUND

On or about June 30, 1993, Plaintiff agreed to purchase a used boring mill from Prestige Equipment Corporation ("Prestige") to be shipped and delivered from Monterrey, Mexico to Ontario, Canada. (Complaint ¶ 10). Defendant agreed to transport the components of the mill from Houston, Texas to Mississauga, Ontario and issued ten separate bills of lading, one for each shipment of components. (Affidavit of Randy Arnold ¶¶ 5–6, Appendix 2 of Trism's Notice of Motion to Dismiss); (Defendant's Rule 3(g) Statement ¶¶ 6–7). Each bill of lading was a Uniform Straight Bill of Lading and contained pre-printed language stating that it was subject to the "classifications and tariffs in effect" on the date of its issue. (Affidavit of Randy Arnold ¶ 6); (Def's Rule 3(g) Statement ¶ 7).

Section 2(b) of the Uniform Straight Bill of Lading in Trism's Rules Tariff provided:

> **As a condition precedent to recovery, claims must be filed** in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred, or carrier in possession of the property when the loss, damage, injury, or delay occurred, **within nine months after delivery of the property ... and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part thereof specified in the notice.** Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier will be held liable, and such claims will not be paid.

(*See* Exhibit C to the affidavit of Randy Arnold); (Def's Rule 3(g) Statement ¶ 8) (emphasis added).

The boring mill was transported overland from Mexico to Canada via the United States. Upon the arrival of the shipments to Mississauga on or about July 24, 1993, Plaintiff discovered that the boring mill had been damaged. (Complaint ¶ 15); (Plaintiff's Rule 3(g) Statement ¶ 1). At the time of delivery, Plaintiff indicated on several of the bills of lading that it received various parts of the boring mill in damaged condition. (Exhibit A to the affidavit of Randy Arnold).

On September 3, 1993, DiPaolo's representative, Tim Robinson of Transport Fleet Services ("TFS"), wrote a letter to Trism advising it that four of the ten shipments transported to DiPaolo in Mississauga had arrived in damaged condition. (Pl's Rule 3(g) Statement ¶ 2). In the letter, Robinson claimed that the damage had occurred "as a result of inadequate and/or improper preparation for road transport" and stated that additional information would be sent as to the "extent of the damages and the amount of loss." (Exhibit D to the affidavit of Randy Arnold).

On September 23, 1993, Randy Arnold, Trism's cargo claims manager, wrote DiPaolo in response to Robinson's letter, stating that Trism was denying the claim based on its "ongoing investigation" in the matter, which had revealed that the shipper (Prestige) was responsible for ensuring that the cargo was prepared for road transportation. (Exhibit E to the affidavit of Randy Arnold); (Def's Rule 3(g) Statement ¶ 10). A series of correspondence between the two companies followed. On December 23, 1993, Robinson sent a fax to Arnold confirming their earlier telephone conversation, during which Arnold had informed Robinson that the statute of limitations period on Trism's bills of lading was nine months for the filing of a claim and

two years and a day for the institution of a lawsuit. (Exhibit A to the second affidavit of Randy Arnold); (Def's Rule 3(g) Statement ¶ 12).

On April 21, 1994, Robinson sent Arnold a final statement of claim on behalf of DiPaolo for the amount of $ 291, 332.58. (Exhibit B to the affidavit of Cary Stewart Sklaren); (Pl's Rule 3(g) Statement ¶ 5). In response to the April letter, Arnold wrote to Robinson on July 5, 1994 in order to request that Robinson reschedule a meeting with Shawn Malik, an investigator for Trism. He concluded by reiterating that Trism "continue[s] to deny this claim as outlined in the letter dated September 23, 1993." (Exhibit C to the affidavit of Cary Stewart Sklaren).

On September 23, 1994, Malik wrote to Robinson, seeking clarification on the "specific total cost of repairs per bill of lading." (Exhibit A to the affidavit of Cary Stewart Sklaren); (Pl's Rule 3(g) Statement ¶ 4). Robinson responded on January 5, 1995, requesting further correspondence regarding reimbursement of Trism's "subrogated claim" at Malik's earliest convenience. (Exhibit D to the affidavit of Cary Stewart Sklaren). There was no further correspondence between the parties regarding the claim.

DiPaolo has instituted two prior lawsuits against Defendant and other parties involving the same grounds for suit as in the instant action. (Def's Rule 3(g) Statement ¶ 13). One was filed in Harris County, Texas on July 24, 1995. (See Petition; Exhibit A to the affidavit of Kip D. Richards). Plaintiff subsequently filed a Notice of Non–Suit Without Prejudice in Harris County. (Exhibit B to the affidavit of Kip D. Richards). Another lawsuit was filed on July 21, 1995 in the Ontario Court of Justice. (See Statement of Claim; Exhibit C to the affidavit of Kip D. Richards). Defendant and its co-defendants moved to have the action dismissed on the grounds of forum non conveniens, and the Ontario Court of Justice granted this request on February 16, 1996. (See Judgment; Exhibit D to the affidavit of Kip D. Richards). DiPaolo appealed the decision and the appeal is still pending.

Thereafter, on June 27, 1996, Plaintiff filed a complaint with this Court.

## DISCUSSION

### I. Standard of Review

#### A. 12(b)(6) Standard

The Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. All that is required is "a short plain statement of the claim" giving notice of the nature of the claim and the grounds upon which it rests. *Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Fed. R.Civ.P. 8(a)(2). When considering a defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept as true factual allegations in the complaint and construe all reasonable inferences in the plaintiff's favor. *Leatherman,* 507 U.S. at 164; *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). The complaint should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

#### B. Conversion into Summary Judgment

With their motions currently before this Court, both parties have submitted exhibits and affidavits outside of the pleadings, as well as Local Rule 3(g) statements. This Court converts the motion to dismiss for failure to state a claim into a summary judgment motion pursuant to Fed.R.Civ.P. 12(b)(6) and 56(c). When both parties in a particular action introduce affidavits and exhibits outside of the pleadings in support of and in opposition to a motion to dismiss, it is appropriate for the court to consider it as a motion for summary judgment. *Equal Employment Opportunity Commission v. New Cherokee Corporation,* 829 F.Supp. 73 (S.D.N.Y.1993); *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737 (S.D.N.Y.1993) (When both parties have submitted numerous docu-

ments outside of the pleadings, they should not be surprised if the court converts motion to dismiss into motion for summary judgment.); *G. & A. Books, Inc. v. Stern*, 770 F.2d 288 (2d Cir.1985) (When a motion to dismiss is converted into one for summary judgment, a party cannot complain of lack of reasonable opportunity to present sufficient evidence when it has submitted numerous affidavits, exhibits, and materials outside the pleadings.).

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In a ruling on a motion for summary judgement, a trial court must be limited to "discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Chase Manhattan Bank, N.A. v. T & N plc*, 905 F.Supp. 107, 111 (S.D.N.Y.) (quoting *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994)). In determining whether there is enough evidence presented so that a reasonable jury could return a verdict for the non-moving party, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden demonstrating that there is no genuine issue of material fact to be tried, the burden shifts to the non-moving party to present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Chase Manhattan Bank*, 905 F.Supp. at 112. Mere conclusory allegations will not suffice. *Anderson*, 477 U.S. at 249.

## II. Plaintiff's Claim Under the Carmack Amendment

The Carmack Amendment governs the liability of common carriers for the loss or damage to goods involved in interstate shipment or transport.[1] The Amendment requires a common carrier to issue a bill of lading for the property it receives for transport, and it imposes liability on the carrier to those entitled to recover under the bill of lading for any loss of or damage to the property transported. 49 U.S.C. § 14706(a) (1996). Manifesting Congress' intent to create a national scheme of carrier liability for goods lost or damaged in interstate commerce, the Carmack Amendment preempts state common law claims such as breach of contract and negligence. *Adams Express Company v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *see Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700 (4th Cir.1993); *W.D. Lawson & Company v. Penn Central Company*, 456 F.2d 419 (6th Cir.1972); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir.1987); *Hughes Aircraft Company v. North American Van Lines, Inc.*, 970 F.2d 609 (9th Cir.1992). In addition, federal common law claims arising out of a relationship with a common carrier are also preempted by the Carmack Amendment. *Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373 (2d Cir.1994) (federal common law claim for punitive damages preempted by the Carmack Amendment).

In the instant case, DiPaolo's breach of contract claim against Trism is governed by the Carmack Amendment. As the "consignee" of the shipments, and listed as such on the bills of lading, DiPaolo has standing to institute action against Trism, as well as a right to recovery of property loss or damage, under the Carmack Amendment. *See Harrah v. Minnesota Mining & Manufacturing Company*, 809 F.Supp. 313, 318 (D.N.J.1992); *Air Products and Chemicals, Inc. v. Illinois Central Gulf Railroad Company*, 721 F.2d 483 (5th Cir.1983).

1. Originally part of the Hepburn Act, ch. 3591, 34 Stat. 584 (1906), and codified at 49 U.S.C. § 20(11), the Carmack Amendment was first recodified in 1978 at 49 U.S.C. § 11707 and then again in 1996 at 49 U.S.C. § 14706. Since the provisions at issue in this case are substantively similar in both versions, either may govern the outcome of this case.

■ Defendant argues that DiPaolo's claim should be dismissed for its failure to expressly plead a cause of action under the Carmack Amendment. Under Fed.R.Civ.P. 8, a complaint will not be dismissed as insufficient if plaintiff can show entitlement to relief under some legal theory. *Dioguardi v. Durning,* 139 F.2d 774, 775 (2d Cir.1944). Inartistic pleadings that do not specify the claim, but which nevertheless make out a cause of action under a plausible legal theory, are acceptable. *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.,* 873 F.Supp. 786 (S.D.N.Y.1995). Since DiPaolo's complaint describes damage to property which allegedly occurred during interstate shipment by a common carrier and was covered by a bill of lading, the complaint is sufficient to state a claim for relief under the Carmack Amendment.

## III. Statute of Limitations

### A. The Disallowance of the Claim

■ Under the terms of the bill of lading in effect, the statute of limitations period for DiPaolo's claim against Trism begins to run "from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part thereof in the notice." A letter disallowing a claim for damages must be "clear, final, and unequivocal." *Combustion Engineering, Inc., v. Consolidated Rail Corporation,* 741 F.2d 533, 537 (2d Cir.1984); *Polaroid Corporation v. Hermann Forwarding Co.,* 541 F.2d 1007, 1012 (3d Cir.1976). In the case at bar, the parties are in disagreement as to which letter in a series of correspondence constituted notice of disallowance to the claimant. Plaintiff argues that the letter of September 23, 1993 did not constitute the requisite disallowance of the tariff provision and that the July 5, 1994 letter was the final denial of the claim. Defendant disagrees arguing that the September 23, 1993 letter was its clear and final denial of Plaintiff's claim.

■ In determining whether a letter was an effective disallowance of a claim for damages, a court may look to the totality of circumstances and the carrier's conduct. *See Cordingley v. Allied Van Lines, Inc.,* 563 F.2d 960, 964 (9th Cir.1977). Subsequent correspondence to the denial of a claim may indicate whether or not the carrier's notice was actually final. *See Morrell v. Chicago, Rock Island and Pacific Railroad Company,* 495 F.2d 331, 332 (7th Cir.1974) (subsequent correspondence, which did not mention earlier letter and apologized for delay in reply, supported view that the initial claim had not been unequivocally denied). Another court, however, has held that subsequent correspondence may be irrelevant in the determination. *See Johnson v. Allied Van Lines, Inc.,* No. 96 Civ. 0395, 1997 WL 137436, at *4 (S.D.N.Y. March 26, 1997) (a court is not required to examine later correspondence when the disallowance can be determined on the face of the initial letter.).

■ In the case at bar, when viewing the totality of Trism's conduct and the subsequent correspondence between Arnold and Robinson, this Court finds that the letter dated September 23, 1993 did indeed constitute an effective and clear disallowance of Plaintiff's claim for damages. Trism's letter of September 23, 1993, responding to Plaintiff's September 3rd letter, stated that Trism's "ongoing investigation" had revealed that the shipper was responsible for ensuring that the cargo was prepared for road transportation, and that "based on the above, this claim is denied." In addition, communications and letters that followed did not intimate that Trism had modified its position. For example, in his December 20, 1993 letter, Robinson confirms a telephone conversation between him and Arnold in which Arnold had informed Robinson of the two-year limitations period for filing suit. Furthermore, in the July 5, 1994 letter to Robinson, Arnold reiterates that Trism "continue[s] to deny this claim as outlined in [his] letter dated September 23, 1993."

This Court finds the discussion in *Universal Manufacturing Corp. v. Associated Rigging and Hauling Corp.* to be on point to the case at bar. 773 F.Supp. 549 (E.D.N.Y. 1991). In *Universal,* plaintiff received property in damaged condition upon defendant UVL's interstate shipment. *Id.* Plaintiff

filed a claim with UVL, in response to which UVL's attorney informed plaintiff that the company denied responsibility for the alleged damage. *Id.* at 550. In a telephone conversation a month later, UVL's attorney agreed to further review the claim and requested that plaintiff provide additional information. *Id.* Other letters followed. More than two years later, plaintiff filed suit. Judge Wexler granted summary judgment to defendant and held that the action was time-barred, for UVL's initial response was "sufficiently clear and final," notwithstanding the subsequent request for additional information. *Id.* at 551.

DiPaolo argues that the use of the term "ongoing investigation" in Robinson's September 23, 1993 letter was intended to mean that Trism's disallowance was not a final one. This Court is not persuaded by that argument because it finds that the letter concluded with a clear denial of responsibility for the alleged damage. Plaintiff's misunderstanding of the words contained in the letters is not dispositive. *See Johnson v. Allied Van Lines, Inc.,* No. 96 Civ. 0395, 1997 WL 137436, at *5 (S.D.N.Y. March 26, 1997) (plaintiff's subjective reading of carrier's letter denying responsibility was not determinative of the outcome); *Cordingley v. Allied Van Lines, Inc.,* 563 F.2d 960, 964 n. 9 (9th Cir.1977) ("shipper's state of mind is not a necessary element of the inquiry").

This Court finds that the September 23 letter clearly states that as a result of its "ongoing investigation," Trism is denying Plaintiff's submitted claim. Any misunderstanding by the Plaintiff as to the intent of the letter does not alter the unequivocal nature of the letter. Thus, after examining the totality of Trism's conduct, including the telephone conversation between Arnold and Robinson and the repeated references to the denial of the September 23, 1993 letter, this Court finds that the September 23, 1993 letter was a clear and final denial of Plaintiff's claim for damages and that there is no genuine issue of material fact regarding the denial of the claim.

### B. Tolling of the Limitations Period

Although several letters between the parties followed in which Trism requested additional information, there is no evidence that the company was conceding liability for the alleged damage. On the contrary, Trism repeated its denial several times. Like the defendant's request for additional information in *Universal,* Trism's letters suggest that it hoped to "re-open the channels of communication between the parties," not that it had abandoned its position that DiPaolo's claim had been denied. *B.F. Goodrich Tire Co. v. Louisville & Nashville Railroad Co.,* 439 F.Supp. 363, 365 (S.D.N.Y.1977). Courts have held that correspondence that hints towards negotiations or a possible settlement does not necessarily negate the earlier disallowance. *B.F. Goodrich Tire Co. v. Louisville & Nashville Railroad Co.,* 439 F.Supp. 363, 365 (S.D.N.Y.1977); *Polaroid Corporation v. Hermann Forwarding Co.,* 541 F.2d 1007, 1012 (3rd Cir.1976). The "purpose for a formal denial of claim is to start the statute of limitations machinery contained in Section 2(b), rather than the discouragement of meaningful negotiations between parties." *B.F. Goodrich Tire Co.,* 439 F.Supp. at 365.

Furthermore, DiPaolo's assertion that it did not understand the September 23, 1993 letter to be the final and clear disallowance seems disingenuous, particularly in light of the fact that it instituted two prior lawsuits against defendants within the two-year limitations period.

Plaintiff's reliance on *Combustion Engineering, Inc. v. Consolidated Rail Corp.* is misplaced. In *Combustion,* the Second Circuit held that the carrier's letter responding to shipper's claim for damages was not sufficiently clear and final so as to commence running of the two-year period of limitations. 741 F.2d 533 (2d Cir.1984). Defendant Conrail's response to plaintiff's claim for freight damage indicated a need for an itemized bill and supporting documents, and stated that the claim "as presented" was disallowed. *Id.* at 534. The initial response, thus, sought more information and solicited further correspondence. DiPaolo attempts to analogize the case at bar to *Combustion* by arguing that the language in Trism's September 23, 1993 letter suggests that Trism was only denying the claim on a preliminary basis,

while awaiting more detailed information. However, even when a carrier has indicated disallowance of any part of submitted claim, the statute of limitations period begins to run. *See White v. United Van Lines, Inc.,* 758 F.Supp. 1240, 1243 (N.D.Ill.1991) ("Once the carrier indicates that the shipper's claim will not be allowed as submitted, subsequent negotiations between the parties will not toll the limitations period."). Unlike the defendant's initial response in *Combustion,* Trism's initial disallowance "displayed no necessity for clarification for the letter did not invite further correspondence ... for the purposes of ascertaining liability." *Star–Kist Foods v. Chicago, Rock Island & Pacific Railroad Co.,* 586 F.Supp. 252, 256 (N.D.Ill. 1984). Therefore, Trism's subsequent correspondence with DiPaolo did not toll the statute of limitations.

Thus, this Court finds that Plaintiff had until September 24, 1995, two years and a day from the date of disallowance, to file this action against Trism. Because DiPaolo did not commence the instant action until June 27, 1996, it is time-barred and there are no genuine issues of material fact as to this issue.

### IV. New York's Savings Clause Does Not Apply to Plaintiff's Case

■ Plaintiff's further assertion that CPLR 205(a), the "Savings Clause," enables it to file this action in a timely fashion fails as well. Section 205(a) provides in relevant part that

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, ... or a final judgment upon the merits, the plaintiff ... may commence a new action upon the same transaction or occurrence ... within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

CPLR § 205(a). DiPaolo argues that since the Ontario action was timely commenced and dismissed on the grounds of forum non conveniens, the action presently before this Court is "saved" as a result of the language of Section 205(a). However, DiPaolo's argument fails because CPLR 205(a) only applies to prior actions commenced in the state or federal courts of New York. *Baker v. Commercial Travelers Mutual Accident Association,* 3 A.D.2d 265, 266, 161 N.Y.S.2d 332, 334 (1957), *appeal dismissed,* 4 N.Y.2d 828, 173 N.Y.S.2d 803, 150 N.E.2d 233 (1958).

### CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact that would preclude the grant of summary judgment. Defendant's letter dated September 23, 1993 constituted a clear disallowance of DiPaolo's claim that started the two-year limitations period for instituting suit. Plaintiff's present action is thus time-barred, and it is not saved by Section 205(a), which is applicable only to prior actions commenced in the state or federal courts of New York.

For the reasons set forth above, Defendant Trism's motion for summary judgment is GRANTED.

SO ORDERED.