WINDOWS, INC., Plaintiff–Third–Party–Plaintiff–Appellee,

v.

JORDAN PANEL SYSTEMS CORP., Defendant–Counter–Claimant–Appellant,

Consolidated Freightways Corporation of Delaware, Defendant.

Docket No. 98–7603.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1998.

Decided April 21, 1999.

Terrence J. O'Connor, White Plains, N.Y. (Law Offices of Robert P. Pagano, White Plains, N.Y.), for Defendant–Counter–Claimant–Appellant.

Marian H. Russo, Patchogue, N.Y. (Steven Taitz, Pelletreau & Pelletreau, Patchogue, N.Y., Of Counsel), for Plaintiff–Third–Party–Plaintiff–Appellee.

Before: NEWMAN, LEVAL, and PARKER, Circuit Judges.

Judge PARKER concurs by separate opinion.

LEVAL, Circuit Judge:

This is an appeal by a buyer from a grant of summary judgment in favor of the seller dismissing the buyer's claim for incidental and consequential damages resulting from damage suffered by the goods during shipment. The district court found that any negligence that might have caused the damage was attributable to the carrier and not the seller. It therefore concluded that the buyer's claim for incidental and consequential damages was barred by N.Y.U.C.C. § 2–613, which precludes the award of such damages when the goods are damaged "without fault of either party." We affirm, but in reliance on different provisions of the Code.

Windows, Inc. ("Windows" or "the seller") is a fabricator and seller of windows, based in South Dakota. Jordan Systems, Inc. ("Jordan" or "the buyer") is a construction subcontractor, which contracted to install window wall panels at an air cargo facility at John F. Kennedy Airport in New York City. Jordan ordered custom-made windows from Windows. The purchase contract specified that the windows were to be shipped properly packaged for cross country motor freight transit and "delivered to New York City."

Windows constructed the windows according to Jordan's specifications. It arranged to have them shipped to Jordan by a common carrier, Consolidated Freightways Corp. ("Consolidated" or "the carrier"), and delivered them to Consolidated intact and properly packaged. During the course of shipment, however, the goods sustained extensive damage. Much of the glass was broken and many of the window frames were gouged and twisted. Jordan's president signed a delivery receipt noting that approximately two-thirds of the shipment was damaged due to "load shift." Jordan, seeking to stay on its contractor's schedule, directed its employees to disassemble the window frames in an effort to salvage as much of the shipment as possible.

Jordan made a claim with Consolidated for damages it had sustained as a result of the casualty, including labor costs from its salvage efforts and other costs from Jordan's inability to perform its own contractual obligations on schedule. Jordan also ordered a new shipment from Windows, which was delivered without incident.

Jordan did not pay Windows for either the first shipment of damaged windows or the second, intact shipment. Windows filed suit to recover payment from Jordan for both shipments in the Supreme Court of the State of New York, Suffolk County. Jordan counterclaimed, seeking incidental and consequential damages resulting from the damaged shipment. Windows then brought a third-party claim against Consolidated, which removed the suit to the United States District Court for the Eastern District of New York.

Windows settled its claims against Consolidated. Windows later withdrew its claims against Jordan. The only remaining claim is Jordan's counterclaim against Windows for incidental and consequential damages.

The district court granted Windows' motion for summary judgment. It held that § 2–613 of the New York Uniform Commercial Code shields a seller from liability for such damages. That statute provides:

> Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty *without fault of either party* before the risk of loss passes to the buyer ... then
>
> (a) if the loss is total then the contract is avoided; and
>
> (b) if the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity *but without further right against the seller.*

N.Y.U.C.C. § 2–613 (emphasis added).

The district court found that Windows was "without fault" within the meaning of § 2–613 on two grounds. First, the court found that there was no showing of negligence on the part of Windows or its employees. The goods were damaged during cross-country shipment because they were improperly loaded on the truck by Consolidated's employees. (Although Windows' employees assisted in the loading, the court found there was no evidence they were responsible for the negligent stowage.)

Second, the court rejected Jordan's argument that Consolidated's negligence should be attributed to Windows because Consolidated was Windows' "subcontractor." While not disputing Jordan's claim that a seller may be "at fault" for the negligence of its subcontractor, the court found that no subcontractor-principal relationship had been shown, as the contract did not require Windows to "personally deliver" the shipment to New York. "[A]ny negligence attributable to Consolidated," the court ruled, "is not the 'fault' of Windows." Because the goods suffered casualty "without fault of either party," Section 2–613(b) was found to bar Jordan's suit for incidental and consequential damages. This appeal followed.

## DISCUSSION

Jordan does not contest the district court's factual finding that there was no negligence on the part of Windows' employees. However, in view of Windows' engagement of Consolidated, and Consolidated's fault in causing damage to the goods during shipment, Jordan contests the court's conclusion that Windows was "without fault" within the meaning of N.Y.U.C.C. § 2–613. We abandon inquiry into whether the terms of N.Y.U.C.C. § 2–613 were satisfied because the judgment may be affirmed on different grounds.

■ Jordan seeks to recover incidental and consequential damages pursuant to N.Y.U.C.C. § 2–715. Under that provision, Jordan's entitlement to recover incidental and consequential damages depends on whether those damages "result[ed] from the seller's breach." A destination contract is covered by § 2–503(3); it arises where "the seller is *required to deliver* at a particular destination." N.Y.U.C.C. § 2–503(3)(emphasis added). In contrast, a shipment contract arises where "the seller is required ... to send the goods to the buyer and the contract *does not require him to deliver* them at a particular destination." § 2–504 (emphasis added). Under a shipment contract, the seller must "put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case." § 2–504(a). *See also* § 2–504 official c. cmt. 1

(contrasting shipment contracts with destination contracts).

■ Where the terms of an agreement are ambiguous, there is a strong presumption under the U.C.C. favoring shipment contracts. Unless the parties "expressly specify" that the contract requires the seller to deliver to a particular destination, the contract is generally construed as one for shipment. 3A Ronald A. Anderson *Uniform Commercial Code* §§ 2–503:24, 2–503:26; *see also Dana Debs, Inc. v. Lady Rose Stores, Inc.*, 65 Misc.2d 697, 319 N.Y.S.2d 111, 112 (N.Y.City Civ.Ct.1970) (no destination contract absent "explicit written understanding" that goods will be delivered to buyer at a "particular destination").

Jordan's confirmation of its purchase order, by letter to Windows dated September 22, 1993, provided, "All windows to be shipped properly crated/packaged/boxed suitable for cross country motor freight transit and delivered to New York City." We conclude that this was a shipment contract rather than a destination contract.

To overcome the presumption favoring shipment contracts, the parties must have explicitly agreed to impose on Windows the obligation to effect delivery at a particular destination. The language of this contract does not do so. Nor did Jordan use any commonly recognized industry term indicating that a seller is obligated to deliver the goods to the buyer's specified destination. *See* 3A Anderson § 2–503:26.

■ Given the strong presumption favoring shipment contracts, and the absence of explicit terms satisfying both requirements for a destination contract, we conclude that the contract should be deemed a shipment contract.[1]

Under the terms of its contract, Windows thus satisfied its obligations to Jordan when it put the goods, properly packaged, into the possession of the carrier for shipment. Upon Windows' proper delivery to the carrier, Jordan assumed the risk of loss, and cannot recover incidental or consequential damages from the seller caused by the carrier's negligence.

This allocation of risk is confirmed by the terms of N.Y.U.C.C. § 2–509(1)(a), entitled "Risk of Loss in the Absence of Breach." It provides that where the contract "does not require [the seller] to deliver [the goods] at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier." N.Y.U.C.C. § 2–509(1)(a). As noted earlier, Jordan does not contest the court's finding that Windows duly delivered conforming goods to the carrier. Accordingly, as Windows had already fulfilled its contractual obligations at the time the goods were damaged and Jordan had assumed the risk of loss, there was no "seller's breach" as is required for a buyer to claim incidental and consequential damages under § 2–715. Summary judgment for Windows was therefore proper.

■ We are mindful of Jordan's concern that it not be left "holding the bag" for the damages it sustained through no fault of its own. The fact that Jordan had assumed the risk of loss under § 2–509(1)(a) by the time the goods were damaged does not mean it is without a remedy. Under the 1906 Carmack Amendment to

---

1. Judge Parker suggests that the contract was not a destination contract because, while § 2–503(3) requires delivery *"at"* a particular destination, Jordan's confirmation letter said *"to* New York City." We respectfully disagree with Judge Parker's view, and do not rest our opinion on a distinction between "at" and "to." In our view, the distinction between destination and shipment contracts turns on whether the contract required the seller to deliver the goods at (or to) a destination specified by the buyer. We do not read § 2–503(3)'s use of the preposition "at" as a talismanic requirement. In our view, making liability turn on whether the parties used "to" or "at" would produce capricious results and would undermine reasonable expectations where the parties expressly agreed to place responsibility upon the seller to make delivery, but provided delivery should be made "to" the buyer's address.

the Interstate Commerce Act, a buyer or seller has long been able to recover directly from an interstate common carrier in whose care their goods are damaged. *See* 49 U.S.C. § 14706 (formerly 49 U.S.C. § 11707) (1998). Liability attaches unless the carrier can establish one of several affirmative defenses; for example, by showing that the damage was the fault of the shipper or caused by an Act of God. *See Missouri Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Suits under the Carmack Amendment may be brought against a carrier by any person entitled to recover in the carrier's "bill of lading," including the buyer who was to receive the goods. *See* 49 U.S.C. §§ 14706(a)(1), 14706(d); *DiPaolo Machine Works, Ltd. v. Prestige Equip. Corp.,* 998 F.Supp. 229, 233 (E.D.N.Y.1998); *Banos v. Eckerd Corp.,* 997 F.Supp. 756, 762 (E.D.La.1998). Relief available includes "all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936); *see also Air Prods. & Chemicals, Inc. v. Illinois Cent. Gulf R.R. Co.,* 721 F.2d 483, 485 (5th Cir.1983).

## CONCLUSION

The judgment of the district court is affirmed.

PARKER, Circuit Judge, concurring with separate opinion:

I fully concur in the result of the majority opinion and most of its reasoning. I am writing separately to make a point that I think is important but which has not been emphasized in the majority opinion.

The majority opinion analyzes whether the contract in this case was a "shipment" contract or a "destination" contract. It properly indicates that a shipment contract arises where "the seller is required . . . to

send the goods to the buyer and the contract does not require him to deliver them *at* a particular destination." N.Y.U.C.C. § 2–504 (emphasis mine). On the other hand, a destination contract arises where "the seller is required to deliver *at* a particular destination." N.Y.U.C.C. § 2–503 (3)(emphasis mine).

In this case, the language of the contract provided that the windows were "to be shipped properly crated/packaged/boxed suitable for cross country motor freight transit and delivered *to* New York City." (Emphasis added.) Additionally, the contract referred to the specific job site at issue, "Nippon Cargo, JFK Airport, N.Y." To my reading, this contract unambiguously required delivery of goods to a particular location, namely the buyer's job site.

I agree with the majority opinion's conclusion that there is a strong presumption under the N.Y.U.C.C. favoring "shipment" contracts. The question then arises as to what it takes to overcome the presumption. While the opinion appropriately suggests that a commonly recognized industry term would do it,[1] it fails to emphasize the importance of the distinction between delivery *to* a destination versus delivery *at* a destination.

Every sales contract entails a "delivery." *See* N.Y.U.C.C. § 2–503. Further, to the extent that a shipment contract is one that requires or authorizes the seller to "send the goods to the buyer," N.Y.U.C.C. § 2–504, such contract contemplates "delivery," in the colloquial sense, *to* a designated location. *Accord La Casse,* 403 N.Y.S.2d at 442 (shipping instruction to deliver to buyer's residence did not create a destination contract). Accordingly, contractual language that requires goods to be "delivered to" a location does not by itself create a destination contract. This is not to say that a contract containing a term requiring delivery "to" a location is necessarily a shipment contract. The parties may, of course, create a destination contract by the

---

1. The term "F.O.B. buyer's job site" is an     example.

use of language making it clear that the seller's obligation continues to the point of delivery at a particular destination. Rather, the point is that, standing alone, "delivered to" does not constitute a specific agreement designating where the seller will perform its obligation to deliver goods. *See* N.Y.U.C.C. § 2–503 official cmt. 5 ("The seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has specifically agreed so to deliver....").

By contrast, contractual language that requires the seller to "deliver at" a particular location designates a location *at* which the seller must effect delivery. Until the goods are tendered *at* that location, delivery has not occurred and the seller has not performed its duties under the contract. *Cf. Chase Manhattan Bank v. Nissho Pacific Corp.*, 22 A.D.2d 215, 254 N.Y.S.2d 571, 577 (1st Dep't 1964) (in shipment contract, delivery to carrier is delivery to buyer), *aff'd*, 16 N.Y.2d 999, 265 N.Y.S.2d 660, 212 N.E.2d 897 (N.Y.1965).

I do not view this distinction between "to" and "at" as technical or as a trap for the unwary. Parties should be able to create unambiguous destination contracts by employing the precise text of the controlling statute. They may also do so by using other language but should be aware that deviation from the text risks confusion. In sum, "delivered to" and "delivered at" are not, in this context, synonymous.

In my view had the contract in this case tracked the language of § 2–503 (3) by specifying that Windows was required to deliver *at* a particular location in New York City, it would have been a destination contract. The fact that instead Windows was required to deliver *to* a particular location in New York City (absent any additional language) was insufficient to overcome the presumption.